IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

**GAIL MARIE ROBINSON,**

        Plaintiff,

v.

**CAROLYN W. COLVIN,**
Commissioner of Social
Security,[1]

        Defendant.

**No. 13-CV-3007-DEO**

**ORDER**

_____

    This matter is before the Court pursuant to Gail
Robinson's [hereinafter Ms. Robinson] application for
disability insurance benefits under Title II of the Social
Security Act ("Act"), 42 U.S.C. §§ 401 et seq. The parties
appeared for a hearing on August 1, 2013. After considering
the parties' arguments, the Court took the matter under
advisement and now enters the following.

**I.  FACTUAL BACKGROUND**

    Ms. Robinson was born on 12/28/1962. She was 49 years
old at the time of the hearing. She is single and lives with

---

[1] Ms. Robinson originally filed this case against Michael
J. Astrue, Comm. of Social Security. On February 14, 2013
Carolyn W. Colvin became the Commissioner of SSA. The Court,
therefore, substitutes Commissioner Colvin as the defendant in
this action. Fed. R. Civ. P. 25(d)(1).

her sister and sister's boyfriend in Gowrie, Iowa. She has a GED but no other significant education. She is the mother of an adult daughter and has two grandchildren.

Ms. Robinson has a short work history. For a short time, she worked part time as a paid 'dock worker.' Her last significant employment was as a production worker at Electrolux, a company in Webster City, Iowa. She left that job shortly before she was scheduled to be laid off. Ms. Robinson claims disability based on a number of issues that will be discussed below.

## II. PROCEDURAL HISTORY

Ms. Robinson brings this suit challenging the Commissioner's decision regarding her application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq. She protectively filed her application on October 13, 2009. Plaintiff's claim was denied initially on June 16, 2010, and on reconsideration on October 29, 2010. On January 12, 2012, Ms. Robinson appeared for a telephone hearing in Fort Dodge, Iowa. On February 17, 2012, following the hearing, the administrative law judge ("ALJ") found that Ms. Robinson was

not under a disability.  Ms. Robinson appealed her claim to the Appeals Council, who denied her claim on December 26, 2012.  Ms. Robinson filed the present Complaint on February 7, 2013.

The ALJ set out the issue presently before the Court:

> [t]he issue is whether claimant is disabled under sections 216(i) and 223(d) of the Social Security Act, as amended. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act, as amended, are met.

Docket No. 8, Tr. 9-10.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits.  20 C.F.R. § 404.1520.  The five successive steps are:  (1) determination of whether a plaintiff is engaged in "substantial gainful activity," (2) determination of whether a plaintiff has a

"severe medically determinable physical or medical impairment"
that lasts for at least 12 months, (3) determination of
whether a plaintiff's impairment or combination of impairments
meets or medically equals the criteria of a listed impairment,
(4) determination of whether a plaintiff's Residual Functional
Capacity (RFC) indicates an incapacity to perform the
requirements of their past relevant work, and (5)
determination of whether, given a Plaintiff's RFC, age,
education and work experience, a plaintiff can "make an
adjustment to other work." 20 C.F.R. § 404.1520(4)(i-v).

At step one, if a plaintiff is engaged in "substantial
gainful activity" within the claimed period of disability,
there is no disability during that time. 20 C.F.R. §
404.1520(a)(4)(i). At step 2, if a plaintiff does not have a
"severe medically determinable physical or mental impairment"
that lasts at least 12 months, there is no disability. 20
C.F.R. § 404.1520(a)(4)(ii). At step 3, if a plaintiff's
impairments meet or medically equal the criteria of an
impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix
1, and last at least 12 months, a plaintiff is deemed
disabled. 20 C.F.R. § 404.1520(e). Before proceeding to step

4 and 5, the ALJ must determine a plaintiff's Residual Functional Capacity [RFC]. RFC is the "most" a person "can still do" despite their limitations. 20 C.F.R. § 404.1545(a)(1). The RFC an ALJ assigns a plaintiff has been referred to as the "most important issue in a disability case . . . ." <u>Malloy v. Astrue</u>, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009) (citing <u>McCoy v. Schweiker</u>, 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc) *abrogated on other grounds* by <u>Higgins v. Apfel</u>, 222 F.3d 504, 505 (8th Cir. 2000)). When determining the RFC, the ALJ must consider all of the relevant evidence and all of the Plaintiff's impairments, even those which are not deemed severe, as well as limitations which result from symptoms, such as pain. 20 C.F.R. § 404.1545(a)(2) and (3). An ALJ "may not simply draw his own inferences about a plaintiff's functional ability from medical reports." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1070 (8th Cir. 2004).

At step 4, if, given a plaintiff's RFC, a plaintiff can still perform their past relevant work, there is no disability. 20 C.F.R. § 404.1520(a)(4)(iv). At step 5, if, given a plaintiff's RFC, age, education, and work experience,

a plaintiff can make an adjustment to other work, there is no disability. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v). This step requires the ALJ to provide "evidence" that a plaintiff could perform "other work [that] exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2). In other words, at step 5, the burden of proof shifts from a plaintiff to the Commissioner of the S.S.A.. <u>Basinger v. Heckler</u>, 725 F.2d 1166, 1168 (8th Cir. 1984). The ALJ generally calls a Vocational Expert (VE) to aid in determining whether this burden can be met.

In this case, the ALJ applied the appropriate methodology and found that Ms. Robinson had not previously engaged in substantial gainful employment. The ALJ stated that Ms. Robinson suffers from the following combination of impairments that together are severe: fibromyalgia, degenerative disc disease, status post cervical fusion, obesity, affective disorder, anxiety disorder, and a possible personality disorder. However, the ALJ found that Ms. Robinson did not suffer from a disability as contemplated by the Social Security Code. Specifically, the ALJ stated:

> [c]laimant does not have an impairment or
> combination of impairments that meets or
> medically equals the severity of one of the
> listed impairments in 20 CFR Part 404,
> Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525 and 404.1526). Neither claimant
> nor her attorney has contended her combined
> impairments meet the specific severity
> requirements of any impairment set forth in
> the Listing of Impairments. Claimant bears
> the burden of proof at this step of the
> sequential evaluation process and does not
> meet it.

Docket No. 8, Tr. 14. The ALJ largely based his decision on

the statements of the state agency medical consultants. The

ALJ stated:

> Laura Griffith, D.O., and John May, M.D.,
> each a state agency medical consultant,
> mutually opined that claimant's combined
> physical impairments, including
> consideration of those that are "severe"
> and not "severe" within the meaning of the
> regulations, do not meet or medically equal
> the specific severity requirements of any
> physical impairment set forth in the
> Listing of Impairments. The Administrative
> Law Judge accords great weight to the
> mutually supportive opinions provided by
> Drs. Griffith and May at this step of the
> sequential evaluation process. They are
> each not only a board-certified physician,
> a well-qualified physical healthcare
> specialist and an "acceptable medical
> source" as defined in 20 CFR 404.1513 and
> SSR 06-3p, but also each retains specific
> expertise regarding evaluations of physical
> impairments set forth in the Listing of
> Impairments and the disability programs

administered by the Social Security
Administration. Further, their opinions
are consistent with objective and clinical
findings set forth in contemporaneous
treatment notes and the report from a
consultative medical examiner that do not
establish that her combined physical
impairments result in the requisite degrees
of anatomical deformity, bony abnormality,
joint dysfunction, gross and fine motor
deficits or other neurological deficits,
ambulatory deficits, sleep-related
breathing deficits, gastrointestinal
deficits, or endocrinal deficits sufficient
to meet the specific severity requirements
set forth in Sections 1.00, 3.00, 5.00,
9.00, or 11.00 of the Listing of
Impairments, or any other physical
impairment set forth therein.

Docket No. 8, Tr. 14. The ALJ also determined that Ms.

Robinson did not have a mental impairment as defined by

Appendix 1, Subpart P, Regulation No. 4.

The ALJ went on to consider residual functional capacity

and concluded:

[a]fter careful consideration of the entire
evidentiary record, the Administrative Law
Judge finds that, from June 12, 2009,
through the date of this Decision, claimant
has retained the residual functional
capacity to lift, carry, push, or pull 20
pounds occasionally and 10 pounds
frequently. She can sit, stand, or walk
each for 6 hours total throughout the
course of a normal 8-hour workday with
normal breaks. She retains the capacity to
occasionally perform basic postural

8

work-related activities including climbing,
balancing, stooping, kneeling, crouching,
or crawling. She retains the capacity to
perform basic manipulative work-related
activities including reaching, handling,
fingering, and feeling within the
above-cited weight limits. She retains no
significant communicative or sensory
work-related limitation regarding her
ability to see with corrective lenses,
hear, speak, taste, or smell, and no
significant environmental limitation. She
is restricted to no more than simple,
routine, repetitive work, but otherwise
retains the capacity to understand,
remember, and carry out simple instructions
or tasks; use simple judgment; respond
appropriately to supervisors, coworkers,
and usual work situations; and deal with
changes in a typical work setting.

Docket No. 8, Tr. 15. The ALJ then considered the plaintiff's

credibility under the Polaski standard and stated:

[a]fter careful consideration of the entire
evidentiary record, the Administrative Law
Judge finds evidence, the undersigned finds
that claimant's medically determinable
impairments could reasonably be expected to
cause some pain and some of the other
physical and mental symptoms alleged;
however, claimant's allegations, as well as
those of her sister reflected in a third
party questionnaire (Exhibit 5E), regarding
the intensity, persistence, and overall
limiting effects of these symptoms are not
credible as they are inconsistent with
objective and clinical findings reflected
in contemporaneous medical treatment
records, the clinical findings reported by
a consultative medical examiner, the

medical opinions provided by state agency
medical and psychological consultants, and
a preponderance of the evidence as a whole
as discussed more fully below. Moreover,
there are other factors discussed more
fully below that detract from claimant's
general credibility regarding the degrees
of pain and other physical and mental
limitations and restrictions she and her
sister allege in this appeal.

Docket No. 8, Tr. 15-16. The ALJ also considered Ms.

Robinson's testimony that she did little housework because of

her pain. The ALJ did not find Ms. Robinson's testimony

persuasive, stating:

[i]n a disability questionnaire filed in
conjunction with her application, claimant
alleged disability since June 12, 2009, due
to a combination of physical and mental
impairments. However, in other
questionnaires, claimant and her sister
each acknowledged that she performs a
variety of activities of daily living that
inherently require performances of a wide
range of basic physical and mental
work-related activities that are
inconsistent with disability, such as
providing for her own personal care and
hygiene, caring for a pet cat and changing
its litter box, preparing simple meals,
doing some housecleaning, doing some
laundry, driving or riding in a car, going
outside alone, going shopping for up to 2
hours at a time, performing financial
transactions, using a personal computer
daily, watching television, engaging in
some social interactions and mostly by
telephone, and spending some days running

errands or attending appointments. She also admitted she can walk l/2-mile at a time and needs to rest only 5-10 minutes thereafter before resuming walking, retains considerable capacity to follow written or spoken instructions, and does not need to use a brace on her right hand often. (Exhibits 2E, 3E, and 9E).

Docket No. 8, Tr. 16. The ALJ similarly emphasized only the portion of the questionnaire filed about by Ms. Robinson's sister that stated Ms. Robinson does some (small) amount of housework. Id.

The ALJ found significant Ms. Robinson's medical history while she worked at Electrolux, stating:

[t]he medical evidence reveals claimant has a history of degenerative disc disease of the cervical spine and that she underwent a cervical fusion procedure at C5-C6 with bone grafting at that level for nerve roots, but also that she apparently tolerated that procedure well and without complications. Her work history and earnings record establishes that she returned to full-time work as a production worker at Electrolux following convalescence from that procedure and achieved wages surpassing the prescribed levels presumptive of substantial gainful activity for multiple successive years. In disability and work history questionnaires, claimant admitted that work involved standing the entirety of an 8-hour workday and involved lifting and placing a dryer motor on plates to screw them in, then lifting that product and turning around to

pass it on to the next person, all of which
reportedly occurred "at a very fast pace."

Docket No. 8, Tr. 17. The ALJ considered Ms. Robinson's

treatment notes and stated:

> [t]he medical evidence of record does not
> reflect that claimant presented for medical
> treatment with complaints of disabling pain
> and other symptoms alleged as disabling in
> this appeal immediately proximal to the
> time she discontinued working for
> Electrolux... In late August 2009,
> claimant presented to Dr. Lee with
> complaints of increased anxiety, mostly
> worries and concerns about her future due
> primarily to financial constraints such
> that she was "struggling to make ends
> meet." At this encounter, Dr. Lee reported
> claimant "seems to think she has chronic
> fatigue syndrome or fibromyalgia or both
> and she wishes to be confirmed with the
> diagnosis and treatment be initiated,"
> which yielded his referral to her primary
> physical healthcare physician in this
> regard... In late February 2010, about 4
> months after claimant protectively filed
> her application for disability benefits,
> but over 2 weeks prior to the date she
> actually filed the application needed to
> commence adjudication, and over 8 months
> subsequent to the time she discontinued
> working at Electrolux because ''the plant
> closed down," claimant presented to Trimark
> Family Practice Associates reporting
> "fibromyalgia acting up" and that she was
> applying for disability benefits due to
> that, but she again denied any chest pain
> or cardiovascular problem respiratory
> problem, abdominal pain or diarrhea,
> swelling, motor disturbance, or significant

> > neurological problem. A physical
> > examination yielded minimal reported
> > findings, but all reported were normal
> > aside from indications of obesity...

Docket No. 8, Tr. 17-18. The ALJ continued through Ms. Robinson's medical record, generally discounting any report where Ms. Robinson complained of severe pain. The ALJ concluded his medical analysis by stating:

> > [i]n reaching the residual functional
> > capacity assessment defined above, the
> > Administrative Law Judge accords accorded
> > great weight to the medical opinions
> > provided by the state agency medical and
> > psychological consultants as they are
> > mutually supportive, consistent with the
> > objective and clinical findings of record,
> > consistent with findings reported by Dr.
> > Latella, and supported by a preponderance
> > of the evidence of record as a whole.

Docket No. 8, Tr. 20.

Based on his analysis, the ALJ concluded that Ms. Robinson is capable of returning to past relevant work. Docket No. 8, Tr. 20-21.

### III. STANDARD OF REVIEW

This Court's role in review of the ALJ's decision requires a determination of whether the decision of the ALJ is supported by substantial evidence on the record as a whole. See 42 U.S.C. § 405(g); <u>Finch v. Astrue</u>, 547 F.3d 933, 935

13

(8th Cir. 2008).  Substantial evidence is less than a preponderance but enough that a reasonable mind might find it adequate to support the conclusion in question.  <u>Juszczyk v. Astrue</u>, 542 F.3d 626, 631 (8th Cir. 2008) (citing <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007)).  This Court must consider both evidence that supports and detracts from the ALJ's decision.  <u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006) (citing <u>Johnson v. Chater</u>, 87 F.3d 1015, 1017 (8th Cir. 1996)).  In applying this standard, this Court will not reverse the ALJ, even if it would have reached a contrary decision, as long as substantial evidence on the record as a whole supports the ALJ's decision.  <u>Eichelberger v. Barnhart</u>, 390 F.3d 584, 589 (8th Cir. 2004).  The ALJ's decision shall be reversed only if it is outside the reasonable "zone of choice."  <u>Hacker v. Barnhart</u>, 459 F.3d 934, 936 (8th Cir. 2006) (citing <u>Culbertson v. Shalala</u>, 30 F.3d 934, 939 (8th Cir. 1994)).

This Court may also ascertain whether the ALJ's decision is based on legal error.  <u>Lauer v. Apfel</u>, 245 F.3d 700, 702

(8th Cir. 2001).   If the ALJ applies an improper legal standard, it is within this Court's discretion to reverse his/her decision.   Neal v. Barnhart, 405 F.3d 685, 688 (8th Cir. 2005); 42 U.S.C. 405(g).

## IV.  ISSUES

In her brief, Ms. Robinson argues that the ALJ errered giving little weight to the evidence of Ms. Robinson's fibromyalgia and mental impairments.   Next, Ms. Robinson argues that ALJ relied on an incomplete hypothetical. Finally, Ms. Robinson argues that the ALJ erred in his credibility determination.   The Court will address these issues below.

## V.  ANALYSIS

In order for a plaintiff to qualify for disability benefits, they must demonstrate they have a disability as defined in the Social Security Act [hereinafter the Act].   The Act defines a disability as an:

> inability to engage in any substantial
> gainful activity by reason of any medically
> determinable physical or mental impairment
> which can be expected to result in death or
> which has lasted or can be expected to last
> for a continuous period of not less than 12
> months . . . .

42 U.S.C. § 423(d)(1)(A).

**A. Credibility**

The first argument the Court will address is about the Plaintiff's credibility and the ALJ's credibility determination.

The standard regarding credibility findings is well settled. "In order to assess a claimant's subjective complaints, the ALJ must make a credibility determination by considering the claimant's daily activities; duration, frequency, and intensity of the pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions." <u>Mouser v. Astrue</u>, 545 F.3d 634, 638 (8th Cir. 2008) citing <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ may not discount subjective complaints solely because they are not supported by objective medical evidence. An ALJ must have sufficient justification for doubting a claimant's credibility. See <u>Wildman v. Astrue</u>, 596 F.3d 959, 968 (8th Cir. 2010) (quoting <u>Schultz v. Astrue</u>, 479 F.3d 979, 983 (8th Cir. 2007)). However, "[a] disability claimant's subjective complaints of pain may be discounted if inconsistencies in the record as a

whole bring those complaints into question." <u>Gonzales v. Barnhart</u>, 465 F.3d 890, 895 (8th Cir. 2006).

As stated above, the ALJ may only discount the plaintiff's complaints if they are inconsistent with the record as a whole. During the hearing, Ms. Robinson testified that she probably would not have continued to work at Electrolux, even if she had not been laid off, because "I had started to feel this pain and I didn't know what it was..." Docket No. 8, Tr. 35. She stated that she "hurts all over... My body aches real, real bad like if... I could describe it as a growing pain, its real bad, and it can come and go anywhere in [my] body." Docket No. 8, Tr. 39. However, she testified that her most intense pain is in her legs and feet. Docket No. 8, Tr. 47-48. Because of the leg pain, she is unable to walk very far, at most thirty minutes, without taking a break. Docket No. 8, Tr. 48. Similarly, she can only stand for five or ten minutes. <u>Id.</u> She can only sit for 15-30 minutes at a time without experiencing pain. Docket No. 8, Tr. 50. She also testified that she missed work because of her depression. Docket No. 8, Tr. 36. Ms. Robinson testified that she is unable to work because "I have pain throughout my body and I

had surgery on my neck some years ago.  I had a herniated disc 6 and 7 with a pinched nerve on the right side and it has gotten worse."  Docket No. 8, Tr. 37.  She also stated that she "can hardly carry anything with my right hand, too heavy, and I get a lot of pain."  Docket No. 8, Tr. 38, 50-51.

The Defendant argues that:

> [d]espite plaintiff's contention to the contrary, see Pl.'s Br. at 7, the ALJ specifically addressed her complaints and diagnoses of fibromyalgia throughout the RFC analysis (Tr. 17-19).  In order to prove disability, however, plaintiff must establish limitations, not just diagnoses. See 20 C.F.R. § 404.1545(e)...  The ALJ also considered that, in 2009, plaintiff appeared to exaggerate her doctors' diagnoses regarding fibromyalgia (Tr. 18)...  And in July 2010, despite reporting "all the symptoms" of fibromyalgia, plaintiff appeared in no acute distress, showed full range of motion in all extremities, and displayed tenderness in only six of the eighteen fibromyalgia tender points (Tr. 19, 362-65)...  In determining credibility, the ALJ may take notice of such "inherent inconsistencies" in the record...  The ALJ further found that plaintiff reported daily activities inconsistent with her complaints of disabling limitations...

Docket No. 13, p. 13-15.

It is clear both the ALJ and the Defendant rely on the fact that Ms. Robinson does some limited work to support the

ALJ's conclusion that Ms. Robinson can return to her past relevant work. However, courts have repeatedly stated that the "limited ability to complete light housework and short errands does not mean [a claimant] has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" <u>Tilley v. Astrue</u>, 580 F.3d 675, 682 (8th Cir. 2009). Ms. Robinson testified that she cannot do much around the house. The ALJ draws conclusions about Ms. Robinson's credibility on very limited facts, including her testimony that she lives in her sister's basement. The ALJ's implication seems to be that if Ms. Robinson really had as much pain as she claims, she would be stuck in the basement forever, and unable to do such things as venture out to testify at Social Security hearings. This conclusion seems faulty. There is simply no evidence in the record that Ms. Robinson does anything other than very basic activities. There is no requirement that to prove you suffer from pain, you must also prove that you live on the main floor of your dwelling. The ALJ's determination that Ms. Robinson's

credibility is impugned because she does basic housework is not supported by substantial evidence in the record.

Similarly, the ALJ discounted the third party report of Ms. Robinson's sister. Ms. Robinson's sister reported that Ms. Robinson takes care of a cat and makes herself lunch (even though cooking causes her pain). Docket No. 8, Tr. 174-177. The sister also stated that she makes Ms. Robinson supper daily. Id. She reported that Ms. Robinson cannot sleep because of pain. Id. She stated that even when Ms. Robinson does laundry and cleaning, she is in pain. Id. Her sister also reported that when Ms. Robinson goes grocery shopping, she returns tired and in pain. Docket No. 8, Tr. 176-177.

The 8th Circuit Court of Appeals has ruled that, "statements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints of pain. "Willcockson v. Astrue, 540 F.3d 878, 880-81 (8th Cir. 2008). That Court went on to say, "witnesses such as the family members who gave statements here often may be the only ones who witness a claimant's difficulties; though the ALJ is of course not required to accept all lay testimony, we think that it is almost certainly

error simply to ignore it altogether." <u>Willcockson</u>, 540 F.3d at 881. In this case, even though the ALJ referenced the sister's opinion, he ignored it without sufficient justification, and, to the extent he did consider it, he misrepresented it completely. The testimony seems remarkably consistent that Ms. Robinson is unable to do much in the way of work and her activities have been substantially restricted by her back pain. Even those things which Ms. Robinson is able to do, such as leave the basement, make herself lunch, and go to the store, cause her pain. The ALJ's decision to discredit the lay person report is not supported by substantial evidence.

The Defendant also relied on the fact that Ms. Robinson applied for and received unemployment benefits to determine to bolster the ALJ's credibility determination. Docket No. 11, p. 16-17. It is true that in some circumstances, receiving unemployment benefits can be construed against a claimant. Courts have stated:

> "[a]pplying for unemployment benefits may be some evidence, though not conclusive, to negate a claim of disability." Johnson, 108 F.3d at 180-81. See also <u>Cox v. Apfel</u>, 160 F.3d 1203, 1208 (8th Cir. 1998) (stating "the acceptance of unemployment

benefits, which entails an assertion of the
ability to work, is facially inconsistent
with a claim of disability," but noting
the ALJ cannot base an adverse credibility
finding on this fact alone)... Social
Security Ruling 00-01c, 2000 WL 38896 (Jan.
7, 2000), and <u>Cleveland v. Policy Mgmt.</u>
<u>Sys. Corp.</u>, 526 U.S. 795, 119 S. Ct. 1597,
143 L. Ed. 2d 966 (1999), [discuss] the
intersection of claims under the Social
Security Act and the Americans with
Disabilities Act. In <u>Cleveland</u>, the
Supreme Court held that claims under the
Social Security Act and the Americans with
Disabilities Act do not conflict to the
point where courts should apply a special
negative presumption that precludes relief
under the other Act. <u>Cleveland</u>, 526 U.S.
at 802-03, 119 S. Ct. 1597. In other
words, it is not entirely inconsistent for
a person to assert "total disability"
under the Social Security Act while
asserting he or she could "perform the
essential functions of the job" under the
ADA because the Acts utilize different
standards. <u>Id.</u> at 807, 119 S. Ct. 1597.
For the same reasons, the Memo states,
"[I]t is SSA's position that individuals
need not choose between applying for
unemployment insurance and Social Security
disability benefits." Doc. No. 13-1 at 3.
The Memo reiterates that an application for
unemployment benefits is evidence that the
ALJ must consider together with all of the
other evidence and mentions that the
underlying circumstances are often more
relevant than the mere application for and
receipt of benefits.

<u>Lopez v. Colvin</u>, 959 F. Supp. 2d 1160, 1174 (N.D. Iowa 2013).

In this case, the evidence supports a finding that Ms. Robinson was laid off from her job at approximately the same time that fibromyalgia began to have a significant impact on her ability to function.[2]  The Defendant's argument seems to be that Ms. Robinson should have known the moment she started to experience severe fibromyalgia pain that she would be unable to ever work again.  It was her bad luck that she happened to experience pain at the same time she was laid off, but she should have known to forego unemployment and instead immediately apply for Social Security disability.  This argument is without merit.  Ms. Robinson took the same action that any rational person would; she assumed her pain would improve and that she would be able to work again; that she subsequently determined her medical condition would be more serious should not be held against her.  The AJL's decision to

---

[2] The Eighth Circuit held that fibromyalgia, "which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling" and "often leads to a distinct sleep derangement which often contributes to  a general cycle of daytime fatigue and pain." Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998), citing Cline v. Sullivan, 939 F.2d 560, 563, 567 (8th Cir. 1991).  The Court further described fibromyalgia as a "degenerative disease which results in symptoms such as achiness, stiffness, and chronic joint pain."

rely on these facts, and the Defendant's reference to them, is
not supported by substantial evidence.

Next, the Defendant and the ALJ noted that Ms. Robinson
did not always take medication in the way proscribed by her
health care providers.  In her brief, Ms. Robinson argues:

> [t]hroughout this period Ms. Robinson is at
> the mercy of public dollars.  She has no
> health insurance - only IowaCares and
> whatever the county pays for.  To afford
> the Prozac, Dr. Lee has to fill out forms.
> Tr. 371.  A claimant's inability to afford
> medication can not be used as a basis of
> denying benefits.  Tang v. Apfel, 205 F.3d
> 1084, 1086 (8th Cir. 2000).  The record in
> this case is replete with the frustrations
> that Ms. Robinson has experienced in trying
> to get free medical care to come up with a
> cure of her disabling pain.  This factor
> should not be used against her.

Docket No. 10, p. 14-15.  During the hearing, Ms. Robinson
complained that because of her limited means, she has been
unable to see a neurologist to treat the numbness in her hands
and feet.  Docket No. 8, Tr. 38.  Similarly, she stated she
cannot afford a CPAP machine to treat her sleep apnea.  Docket
No. 8, Tr. 40.  Ms. Robinson correctly points out that the
courts have repeatedly held that a plaintiff's inability to
afford medication should not be held against them.  In this
case, the evidence suggest that Ms. Robinson has limited

means, survives off of public assistance programs, and has depression issues. All of these factors contribute to her inability to comply with the best medical practices advised by her doctors. However, they should not be held against her when determining her credibility, and it was an error for the ALJ to do so.

Finally, as will be discussed more fully in the following sections, Ms. Robinson's testimony is supported by the medical evidence in this case. Accordingly, substantial evidence does not support the ALJ's decision to give little weight to Ms. Robinson's testimony regarding her pain and her limited functioning. In fact, Ms. Robinson's statements regarding her disability are substantially supported by the record in this case, including the medical records of Dr. Lee, Dr. Mooney and therapist Martha Miller. The ALJ's determination was not supported by substantial evidence and was an error. Because Ms. Robinson testified credibly about her pain, and that testimony was supported by the medical evidence, the limitations outlined by Ms. Robinson should have been incorporated into the question posed to the vocational expert.

**B.  Medical Evidence**

The Plaintiff also argues that ALJ failed to give credit to certain medical evidence.  Specifically, the Plaintiff argues that the ALJ failed to give proper weight to Ms. Robinson's primary care provider, Dr. Lee, and failed to credit her mental health issues because he only relied on the opinion's of the state's reviewing doctors.  Docket No. 10, p. 7-10.

As has been repeatedly stated:

> [t]he opinion of a treating physician:
> should not ordinarily be disregarded and is
> entitled to substantial weight.  A treating
> physician's opinion regarding an
> applicant's impairment will be granted
> controlling weight, provided the opinion is
> well-supported by medically acceptable
> clinical and laboratory diagnostic
> techniques and is not inconsistent with the
> other substantial evidence in the record.

Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000).  The Plaintiff is correct that the ALJ relied on the state's doctors at the expense of Ms. Robinson's treating physicians. The ALJ stated:

> Laura Griffith, D.O., and John May, M.D.,
> each a state agency medical consultant,
> mutually opined that claimant's combined
> physical impairments, including
> consideration of those that are "severe"
> and not "severe" within the meaning of the
> regulations, do not meet or medically equal

> the specific severity requirements of any
> physical impairment set forth in the
> Listing of Impairments. The Administrative
> Law Judge accords great weight to the
> mutually supportive opinions provided by
> Drs. Griffith and May...

Docket No. 8, Tr. 14. However, as a review of the record makes clear, Ms. Robinson was treated for severe pain and mental health issues for the entire relevant time period. See for example, Dr. Lee's records, Docket No. 8, Tr. 281-309, and social worker Martha Miller's treatment notes, Docket No. 8, Tr. 379-446. The ALJ's decision to give great weight to the consultants at the expense of treating providers, such as Dr. Lee, other sources, including Martha Miller, is not supported by substantial evidence and was an error.

### C. Hypothetical

At the hearing, the ALJ questioned the vocation expert about Ms. Robinson's employment prospects. The ALJ presented the vocational expert with an individual with the age, education, and past work history of Ms. Robinson, who could occasionally lift 20 pounds/frequently lift 10 pounds; stand and walk for six hours out of an eight hour day and sit for six hours of an eight hour day; who can occasionally, balance, stoop, crouch, kneel, crawl, and climb and who's able to do only simple, routine, receptive work. Docket No. 8, Tr. 55.

The vocational expert testified that such a person would be able to perform all of Ms. Robinson's past work. The vocational expert also testified that a person who could stand and walk two hours a day would be able to find some sedentary work. Docket No. 8, Tr. 56. However, the vocational expert admitted that under either of those scenarios, if the person missed more than two days a month, they would not be able find competitive employment. Docket No. 8, Tr. 57. Additionally, when asked about Ms. Robinson's employment prospects when all the limitations she testified to were considered, the vocational expert stated she would not be able to find any substantial employment. Docket No. 8, Tr. 58.

As has been repeatedly stated, "[a] vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." Buckner v. Astrue, 646 F.3d 549, 560–61 (8th Cir. 2011). "[T]he hypothetical need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." Id. (quoting Hulsey v. Astrue, 622 F.3d 917, 922 (8th Cir. 2010)).

Based on the forgoing analysis regarding credibility and medical evidence, the Court is persuaded that the ALJ failed to properly articulate Ms. Robinson's limitations in the hypothetical question to the vocational expert that the ALJ relied upon. Specifically, the ALJ failed to include limitations as set out in Ms. Robinson's credible testimony, the third party report of her sister, and the medical evidence from Dr. Lee and Ms. Robinson's therapy notes. The vocational expert testified that when he considered all the problems Ms. Robinson testified to, Ms. Robinson would not be able to find jobs on a full time basis. Docket No. 8, Tr. 58. Because the ALJ failed to give appropriate weight to Ms. Robinson's credible testimony, the ALJ's residual functional capacity evaluation is flawed as was the hypothetical answer the ALJ relied on. Accordingly, the ALJ's determination that Ms. Robinson could return to past relevant work is not supported by substantial evidence in the record.

## VI. CONCLUSION

It is clear the ALJ erred in the credibility, medical evidence and RFC sections discussed above. The question thus becomes whether this Court should remand for further consideration or solely for the purpose of awarding benefits.

This Court has the authority to reverse a decision of the Commissioner, "with or without remanding the cause for rehearing," but the Eighth Circuit has held that a remand for an award of benefits is appropriate only where "the record 'overwhelmingly supports'" a finding of disability. 42 U.S.C. 405(g); <u>Buckner v. Apfel</u>, 213 F.3d 1006, 1011 (8th Cir. 2000) (citing <u>Thompson v. Sullivan</u>, 957 F.2d 611, 614 (8th Cir. 1992).

The Court has considered the entire record, the parties' briefs, and the arguments presented at hearing. When the medical evidence is considered along with the Plaintiff's credible testimony, this Court is persuaded that the overwhelming evidence supports a finding of disability.

**Therefore, the decision of the ALJ is reversed and remanded solely for the calculation of benefits from Plaintiff's claimed onset of disability.**

Application for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA), must be filed within thirty (30) days of the entry of final judgment in this action. Thus, unless this decision is appealed, if plaintiff's attorney wishes to apply for EAJA fees, it must be

done within thirty (30) days of the entry of the final
judgment in this case.

   **IT IS SO ORDERED** this 26th day of March, 2014.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa